## IN THE COURT OF APPEALS OF IOWA

No. 22-0723
Filed September 21, 2022

**IN THE INTEREST OF S.P. and T.P.,**
**Minor Children,**

**M.K., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Dickinson County, Shawna L. Ditsworth, District Associate Judge.

        A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

        Elizabeth K. Elsten, Spirit Lake, attorney for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Pamela Wingert, Spirit Lake, attorney and guardian ad litem for minor children.

        Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

M.K. appeals the termination of her parental rights to two children, S.P. and T.P. She argues the Iowa Department of Human Services (DHS) did not fulfill its reasonable-efforts obligation, the statutory ground for termination is not satisfied, a six-month extension should be granted, and termination is not in the children's best interests. Upon our de novo review, we affirm termination of her parental rights to these children.

## I.    *Background Facts and Proceedings.*

S.P. first came to the attention of the DHS when his mother and father resided together in 2019. During that time, the DHS conducted two investigations resulting in unfounded allegations of child abuse. The mother contends domestic violence plagued her relationship with the children's father, which caused her to leave while pregnant with T.P.[1] After T.P. was born, the mother began an online relationship with a man from North Dakota. This man moved in with the mother and her two children in August 2020. He has a history of abusing alcohol and was arrested for public intoxication in October.

On November 17, 2020, the DHS received a report of potential child abuse involving S.P. Upon investigation, the mother's paramour admitted to injuring S.P., who was then twenty months old, the night prior. During the hour or so he was left alone with the children, the paramour hit S.P. in the head with a door and struck him with the back of his hand, leaving dark bruises around his left ear and left side of his face and a smaller bruise on the back of his right ear. The paramour was

---

[1] The parental rights of S.P. and T.P.'s father were also terminated, and he does not appeal.

intoxicated at the time of the incident. He acknowledged the children were fussing and he was unable to calm them down. A police officer arrested the paramour for child endangerment, possession of a controlled substance (marijuana), and assault causing bodily injury. He later served thirty days in jail and agreed to a criminal no-contact order with S.P. for five years. After the DHS visit, the mother took S.P. to the emergency room and confirmed he did not have any broken bones. She claims she did not notice the extent of his injuries until she picked him up from daycare, shortly before the DHS arrived at her home.

On December 11, the mother bailed her paramour out of jail. On December 21, a safety plan was created where the children would reside with their maternal great-grandparents. They were adjudicated children in need of assistance (CINA) in early March 2021. The court directed the mother to complete a mental-health evaluation and participate in Family Centered Services. It also ordered S.P. and T.P. to have no contact with the mother's paramour. The mother obtained a mental-health evaluation in April, but she was unsuccessfully discharged from therapy due to no call/no shows.

On April 5, the mother was arrested for domestic abuse against her paramour. He was also arrested for public intoxication and possession of drug paraphernalia. After a dispositional hearing that month, the court ordered the mother's paramour to complete mental-health and substance-abuse evaluations and submit to random drug testing. On April 14, law enforcement observed the couple travelling at a high rate of speed with a broken taillight and attempted to conduct a traffic stop. The mother was in the driver's seat when they ultimately pulled over, but she alleged her paramour, who did not have a valid license, was

driving and switched places with her. Her paramour became aggressive and was charged with interference with official acts and public intoxication, while the mother was charged with speeding and failure to have insurance.

On June 6, bystanders called law enforcement to a public beach after seeing the mother's paramour with a gun. Officers determined it was a BB gun and arrested the paramour for public intoxication. According to a DHS report, the mother stated that the arrest "was for nothing and that everything was set up by her mom's friends." Later in June, the mother married her paramour, although reports indicate she denied getting married when asked by her family and the DHS. The mother's family has not been supportive of her romantic relationship.

In September, the mother gave birth to a daughter. A petition for termination of the mother's parental rights to S.P. and T.P. was filed in October. Since the termination filing, the mother has been successful in attending mental-health therapy. Her husband has not participated consistently in either mental-health therapy or substance-abuse services. In October, his drug test returned positive for alcohol, THC, noroxycodone, ethyl glucuronide, ethyl sulfate, oxycodone, and oxymorphone. In addition to arrests for public intoxication, he was arrested a third time for operating while intoxicated in February 2022.

At the time of the termination hearing in March, the mother was pregnant again and living in a one-bedroom apartment with her husband, daughter, and a dog. She maintains employment as a daycare provider at a licensed daycare facility. During her testimony, the mother claimed her grandmother slapped one of the children in her presence about two weeks before the hearing. She testified that she did not speak out initially out of fear her family would withhold visitation.

In April, the court issued an order terminating the mother's parental rights. She filed a timely appeal.

## II. Review.

Our review of termination proceedings is de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted). Though not binding, we give weight to the juvenile court's fact findings. *See* Iowa R. App. P. 6.904(3)(g); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

## III. Discussion.

The principal concern in termination proceedings is the children's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.,* 906 N.W.2d 467, 472 (Iowa 2018). Those steps are whether: (1) grounds for termination have been established, (2) termination is in the children's best interests, and (3) we should exercise any of the permissive exceptions to preclude termination. *Id.* at 472–73.

M.K. contends her sons' continued removal is attributable to the DHS's insufficient efforts and they could have been returned to her at the time of the termination hearing. She further argues that even if they could not be returned at the time of the hearing, a six-month extension would provide sufficient time to

reunify. Finally, M.K. argues termination is not in their best interests. We address each argument in turn.

### A. Reasonable Efforts.

The mother argues the DHS did not make reasonable efforts at reunification. *See* Iowa Code § 232.102(7) (2022) (requiring that DHS "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). However, the mother does not point to any portion of the record where she identified a deficiency in agency services or requested any additional services prior to the filing of the petition for termination. In fact, she filed the motion for services requesting additional visitation and less supervision in late January 2022, after the termination hearing had been continued. Therefore, the mother's motion was untimely. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding."); *T.S.*, 868 N.W. at 425 ("While the State has an obligation to provide reasonable services to preserve the family unit, it is the parent's responsibility 'to demand other, different, or additional services *prior* to the termination hearing.'" (citation omitted)).

Nevertheless, the district court opted to consider the mother's motion for services during the termination hearing. We agree with its finding that the DHS made reasonable efforts towards the permanency goal of reunification. Under Iowa law, "the reasonable efforts requirement is not viewed as a strict substantive requirement of termination." *In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000). Instead, it shapes the State's burden of proof, as it must establish reasonable

efforts were made in connection with proving the child cannot safely be returned to the parents' care. *See id.* Reasonable efforts may include, but are not limited to, finalizing a permanency plan and offering family-centered services. Iowa Code § 232.102(10)(a). In evaluating whether reasonable efforts have been made, our courts consider "the type, duration, and intensity of services or support offered or provided" and the "relative risk to the child of remaining in the child's home versus removal of the child." *Id.* § 232.102(10)(a)(1), (2).

Here, the mother does not object to the array of services provided by the DHS. Rather, she contends the DHS should have decreased supervision and increased her visitation. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) ("The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal." (citation omitted)). The mother was allowed two, fully-supervised, two-hour visits outside of her home each week. We find this allocation was reasonable under the circumstances. *See* Iowa Code § 232.102(10)(a) ("A child's health and safety shall be the paramount concern in making reasonable efforts."). The mother has not demonstrated an improvement in her protective capacities, particularly given the progression of her relationship with her now-husband while he continues to abuse alcohol and other substances. Given the risks presented by his presence in the mother's home and the extensive array of services offered by the DHS, we find the agency satisfied its obligation to make reasonable efforts toward reunification.

B. *Statutory Ground for Termination.*

The mother contends the statutory ground for termination was not satisfied. The juvenile court found the State proved by clear and convincing evidence that termination of the mother's parental rights was appropriate under paragraph (h) of Iowa Code section 232.116(1). The court may terminate under this paragraph if it finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The fourth element is at issue: whether the children could be returned to the parent's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

We agree with the juvenile court that the children could not be returned to their mother's care at the time of the termination hearing. Throughout this case, the mother has chosen her romantic partner over her children. She was not forthcoming about their continuing relationship and subsequent marriage. She attempts to minimize his actions despite ongoing concerns with his substance abuse. No attempt has been made to amend the five-year no-contact order between S.P. and his abuser. Due to her husband's lack of progress and their ongoing relationship, the mother failed to progress beyond supervised visits with

S.P. and T.P. "Without this necessary progression [from supervised to unsupervised visits], we cannot say the children could have returned to the [parent's] care." *In re C.N.*, No. 19-1961, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020).

The mother points to the lack of removal of her daughter as evidence that S.P. and T.P. can be returned to her care. However, the presence of another child in the mother's home, who is also under supervision of the DHS, does not compel a finding that her other children can be safely returned. *See In re T.M.*, No. 21-0833, 2021 WL 3661421 (Iowa Ct. App. Aug. 18, 2021) (affirming termination on ground that children cannot be returned to the mother's custody despite the fact that the mother had a younger sibling still in her care). Moreover, we find the following analysis particularly relevant:

> Reunification is a *goal*, not a mandate. The permanency goal in this case was to reunify [the child] with Mom—a goal that could have been accomplished without forcing [the child] to live with her [abuser]. If Mom refuses to keep [the child] safe by forcing [the child] to live in the same home as [the child's] abuser, then Mom—not the system—has drawn a harsh line in the sand that precludes reunification. It is incumbent upon the juvenile court to determine an alternative course of action to keep [the child] safe instead of simply crossing its fingers and hoping [the child's abuser] will not reoffend.

*In re D.D.*, 955 N.W.2d 186, 196–97 (Iowa 2021) (Christensen, J., concurring). We conclude there is clear and convincing evidence that S.P. and T.P. could not be returned to their mother's care at the time of the termination hearing. *See In re B.F.-C.*, No. 21-1914, 2022 WL 1100302, at *2 (Iowa Ct. App. Apr. 13, 2022) (finding two children could not be returned to their mother's care because she "continued a relationship with a man who abused her children—in direct violation of a court order").

*C. Six-Month Extension.*

The mother contends that even if her sons could not be returned at the time of the termination hearing, a six-month extension would provide her sufficient time to achieve reunification. Iowa Code section 232.104(2)(b) authorizes extending a child's placement for an additional six months if the court identifies "specific factors, conditions, or expected behavioral changes" that provide a basis for determining "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Here, the mother's history simply does not support giving her more time to address her lack of boundaries with her now-husband. He has failed to engage consistently in services but has consistently run into trouble with the law. Put simply, the mother has failed to place the needs of her children above her romantic relationship. "While we recognize the law requires a 'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,'" this patience is built into the six-month statutory scheme set forth in Iowa Code section 232.116(1)(h). *C.B.*, 611 N.W.2d at 494 (citation omitted). Therefore, we affirm the juvenile court's decision to deny an extension.

*D. Best Interests of the Children.*

To evaluate the children's best interests, "the court shall give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). Here, the mother has demonstrated a lack of appreciation for the risk of harm posed to the children by residing with her now-husband while he continues to exercise poor decision-making. *See In re A.G.*, No. 18-1161, 2018 WL 6131920, at *3 (Iowa Ct.

App. Nov. 21, 2018) (finding termination is in the best interest of a child when the parent has "refused to acknowledge or address the concerns giving rise to removal").

Furthermore, the children are in a stable placement with their great-grandparents, and their grandparents have expressed a desire to adopt them if termination proceeds. *See* Iowa Code § 232.116(2)(b); *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting a child's favorable integration into a foster placement supports finding termination is in the child's best interests). The children deserve the permanency and security offered by these extended family members. *See A.S.*, 906 N.W.2d at 474 ("[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)). Accordingly, we conclude termination of their mother's parental rights is in the children's best interests.

## IV. Disposition.

In sum, we find reasonable effort services were provided, the statutory ground is satisfied, an extension is not warranted, and termination is in the children's best interests. Therefore, we affirm termination of the mother's parental rights to S.P. and T.P.

**AFFIRMED.**